**Bruce HALDERMAN, by his mother and natural guardian, Winifred Halderman, on behalf of himself and all others similarly situated, et al.**

**v.**

**John C. PITTENGER, Individually and as Secretary of the Pennsylvania State Dept. of Education, et al.**

**Civ. A. No. 74-2716.**

United States District Court,
E. D. Pennsylvania.

March 12, 1975.

**873**

Richard P. Weishaupt, Stephen F. Gold, Community Legal Services, Philadelphia, Pa., for Halderman, Wroten and class plaintiffs.

Thomas F. Fricke, Merion, Pa., for T. Leonard.

Israel Packel, Atty. Gen., Kathleen Herzog Larkin, Asst. Atty. Gen., Harrisburg, Pa., for defendant.

Charles N. Sweet, Curtin & Heefner, Morrisville, Pa., for Ernest H. Mueller and The Pennsbury School Dist.

Robert T. Lear and Edward B. Soken, Philadelphia, Pa., for Matthew Costanzo and School Dist. of Philadelphia.

Wisler, Pearlstine, Talone, Craig & Garrity, Norristown, Pa., for D. Van-Wagenen and the Lower Merion School Dist.

## MEMORANDUM

GORBEY, District Judge.

This is an action under the Civil Rights Act challenging the constitutionality of the Public School Code, 24 P.S. §§ 13–1376 and 13–1377.

Relief requested includes the enjoining of the enforcement and execution of the aforesaid statute. Plaintiffs have also filed a motion for the convening of a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284, and have moved for the designation of a class action under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

The named plaintiffs are three children who formerly attended public schools in their respective school districts and who are alleged to be "exceptional children" within the meaning of 24 P.S. § 13–1371. They are presently attending private schools which have been approved by the Commonwealth of Pennsylvania for tuition reimbursement. They allege that the total cost of their education at these schools exceeds the statutory tuition reimbursement, and in some instances may prevent the child of a poor family from getting an education because of an inability to pay the tuition costs which exceed the statutory maximum. In this situation the claim is made that the statutory provisions on their face and as applied violate the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983 of the Civil Rights Act.

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure contending that this court lacks subject matter jurisdiction because the amount in controversy, as to each plaintiff, is less than $10,000, exclusive of interest and costs.

This contention rests upon the fact that the dollar amount in excess of the statutory grant for the present academic year is respectively $200.00, $640.50, and $800.00.

In cases where there is an adequate remedy at law, the jurisdictional amount as to each named plaintiff usually must be determined by reference to the total sum of his damages. In cases, such as the case *sub judice*, where there is no adequate remedy at law, the measure of jurisdiction is the value of the rights sought to be protected by injunctive relief. The rights sought to be protected in this case are the Fourteenth Amendment rights to equal protection

and due process of law. Accordingly, and in accord with the reasoning of the court in Spock v. David, 469 F.2d 1047 (3d Cir. 1972), where First Amendment rights were involved, defendants' motion to dismiss for lack of the requisite jurisdictional amount must be denied. *See also*: Sedivy v. Richardson, 485 F.2d 1115 (3d Cir. 1973).

The statutes challenged by plaintiffs provide that when children who are blind, deaf, afflicted with cerebral palsy, brain damage, muscular dystrophy, or who are socially and emotionally disturbed are accommodated by approved private schools, the school district and the Commonwealth of Pennsylvania share the costs of the tuition on a 25–75 per cent basis up to the following amounts:

$5,500 for a year for tuition and maintenance of residential students;

$4,125 for blind or deaf day students;

$3,500 for cerebral palsied, brain damaged and muscular dystrophied day students, and

$3,300 for socially and emotionally disturbed children.

In Count I of the complaint plaintiffs contend that the setting of a maximum tuition reimbursement grant constitutes discrimination against exceptional children certified to attend approved private schools in that all other children are afforded the opportunity for a free education while these exceptional children do not have an opportunity for a free education.

Count II alleges that the setting of a maximum tuition reimbursement grant constitutes discrimination against exceptional children certified to attend approved private schools in that other exceptional children are afforded the opportunity for a free education while the exceptional children who are certified to attend private schools do not have an opportunity for a free education.

In Count III the contention is made that the failure of the defendants to cover the full costs of special education for all exceptional children works a discrimination against those unable to afford the additional costs of tuition at approved private schools. That this discrimination results in denial of appropriate education, a benefit enjoyed by all average children, exceptional children for whom the defendants provide appropriate programs and those who attend private schools whose parents can afford to supplement the tuition reimbursement grant.

In Count IV the claim is made that the aforesaid statutory provisions and regulations promulgated pursuant to said statutes on their face and as applied violate the Due Process Clause of the Fourteenth Amendment and accordingly, 42 U.S.C. § 1983, because those children whose parents are unable to supplement the tuition reimbursement grant are absolutely deprived of any meaningful opportunity for appropriate education.

In Count V the contention is made that the aforesaid statute and regulations on their face and as applied violate the Rehabilitation Act of 1973, 87 Stat. 355, and that such violation is inconsistent with the Supremacy Clause, Article VI of the United States Constitution.

■ In Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973) the Court stated the circumstances which would not require the convening of such a court. There the Court stated:

"Title 28 U.S.C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' (citation omitted) 'wholly insubstantial,' (citation omitted) 'obviously frivolous,' (citation omitted); and 'obviously without merit,' (citation omitted). The limiting words 'wholly' and 'obviously' have cogent le-

gal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render things frivolous; . . . A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' (citations omitted)" *Id.* 518, 93 S.Ct. 858.

We may take it as established that "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected." San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). Also that a state does not deny equal protection merely by making the same grant to persons of varying economic need. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 518, 57 S.Ct. 868, 81 L.Ed. 1245 (1937). It may also be accepted that "If sufficient funds are not available to finance all of the services and programs that are needed and desirable in the system then the available funds must be expended equitably in such a manner that no child is entirely excluded from a publicly supported education . . ." Mills v. Board of Education of District of Columbia, 348 F.Supp. 866, 876 (D.D.C. 1972).

Furthermore, it may be:

"Granted that a state which gives financial aid for the private education of handicapped children unable to attend classes in public schools may have to establish some maximum, cf. Dandridge v. Williams, *supra*, 397 U. S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, since the cost of private education of a child with a particular constellation of handicaps might be astronomical . . ." McMillan v. Board of Edu-

cation of State of New York, 430 F.2d 1145, 1149, 1150 (2d Cir. 1970).

There are, however, some unanswered questions. The state grant is available only if the child in fact attends a private class, therefore if the family involved is unable to pay the excess tuition necessary to be accepted into a private school, the grant fully available to those whose economic need is less, is unavailable to those whose economic need is greatest.

In an appropriate factual situation, the question is raised whether it is consistent with the Equal Protection Clause that a family should be required to pay a sum above the statutory limit if it would cost the state or the district more than that limit to maintain an "exceptional child" in a special class at a public school.

The situation is especially critical where the inability of the family involved to pay the excess tuition required is impossible in which case the child is denied an education that others are receiving at no cost.

Pennsylvania Ass'n, Ret'd Child v. Commonwealth of Pa., 343 F.Supp. 279 (E.D.Pa.1972) while instructive, does not solve the constitutional issues raised in the instant case. As the court pointed out in footnote 19, page 288:

"Our power to enter an injunction does not stem from a finding that the State statutes contravene the United States Constitution or that the state officers acted in an unconstitutional manner. We make no such findings in this opinion. We hold, however, that the plaintiffs have established a colorable constitutional claim, (see pages 293–297 infra) and hence the court has jurisdiction under 28 U.S.C. § 1343(3)."

*See also,* footnote 8, page 283, *supra.*

In the consent decree, approved by the three-judge court, it is expressly stated:

"13. The aforementioned Opinion and Regulations shall also require the

timely placement of any child whose admission to regular primary school or to the lower regular primary class above kindergarten is postponed, or who is not retained in such school or class, in a free public program of education and training pursuant to Sections 1371 through 1382 of the School Code of 1949, as amended 24 Purd. Stat. Sec. 13–1371 through Sec. 13–1382." *Id.* 308.

Since the challenged sections in the case *sub judice* are §§ 13–1376 and 13–1377, the continued references to a "free education" throughout the text, must mean a "free education" within the statutory limits.

It is also significant that the court, at the outset of the proceeding in issuing a temporary restraining order enjoined defendants from applying, *inter alia,* "Section 13–1376 'so as to deny tuition or tuition and maintenance to any mentally retarded person *except on the same terms as may be applied to other exceptional children, including brain damaged children generally;'* . . . " (emphasis added) *Id.* 288.

It must also be noted that the consent decree arose out of a situation where plaintiff had been excluded completely by the State Board of Education from *any* benefits under the statutes involved, a situation entirely different from the instant case.

▐ As the court said in the *McMillan* case, *supra,* there is a developing area of application of the Equal Protection Clause, and the resolution of the issues raised in the instant case would seem to require a considerable amount of evidence. Also the conclusion seems reasonable that plaintiffs' claims, whether they can be sustained or not, are sufficiently substantial as to require the convening of a three-judge court.

Action on other pending motions will be deferred until the convening of this special court.